## THELEN v. MUTUAL LIFE. INS. CO. OF N. Y.

Court of Appeals of Kentucky.

May 22, 1953.

Rehearing Denied Nov. 6, 1953.

Barbour & Bassmann, Newport, for appellant.

Bullitt, Dawson & Tarrant, Louisville, for appellee.

CULLEN, Commissioner.

The Mutual Life Insurance Company of New York issued a policy on the life of Louise Thelen in the amount of $2,500, with a double indemnity clause providing for payment of an additional $2,500 in case of accidental death. Following Miss Thelen's death the company paid the face amount of the policy to the beneficiary, Mrs. Adelaide Thelen, but refused payment of the double indemnity. The beneficiary sued for the amount of the double indemnity and the company defended on the grounds that Miss Thelen's death resulted from "mental infirmity" or from "self-destruction", which were specified in the double indemnity clause as grounds for nonliability. Upon the trial, a directed verdict was given for the company, and Mrs. Thelen appeals from the judgment dismissing her action.

The contention of the appellant is that under the circumstances surrounding the death of Miss Thelen, it appears that she came to her death either by accident or by suicide; that there is a legal presumption against suicide; and the defendant did not sustain the burden of proving suicide so completely as to justify taking the case from the jury.

Miss Thelen was found dead, with a fractured skull, on the paved courtyard of a hospital in which she was being treated for a mental disturbance or disorder. Twenty minutes before her body was found, a nurse had left her alone in a bathroom on the third floor of the hospital. The courtyard lies between two parallel wings of the hospital, and an enclosed passageway connecting the two wings at the second-floor level extends across and above the courtyard. An open porch at the third-floor level, in the form of a triangle in the corner between the wing and the main section of the building, extends partly over one end of the roof of the enclosed passageway. Miss Thelen's body was found lying some eight feet out from the inner wall of the

wing in which she had been confined, and some eight to ten feet out from the outer edge of the roof of the enclosed passageway between the wings.

The proof shows clearly that Miss Thelen could not have fallen accidentally from a window, because of the height of the window sills and the width of the window ledges. It appears that she either fell or jumped from the roof of the enclosed passageway, after having climbed over the porch railing and down onto the roof. The distance her body was found from the edge of the roof, and the fact that she had a fractured skull, suggest strongly that she jumped head first from the roof.

Miss Thelen was 46 years of age. In the spring preceding her death on September 7, she had received electric shock treatments for her mental condition, which was diagnosed as being anxiety neurosis together with involutional depression, both of which conditions normally are accompanied with suicidal ideas. Her doctor testified that she frequently talked about suicide, and said that she would like to do away with herself. During the early summer she received treatments at the doctor's office, and on August 25 she returned to the hospital for further treatment. On this last occasion her treatment consisted mainly of psychotherapy, but on the morning of her death she was scheduled to resume electric shock treatments. When she arrived at the hospital on August 25, she was placed in a locked and barred ward, but three days later, at her own request, she was placed in a room in an "open" part of the hospital. The day before she was to receive the shock treatments, she was moved back into the locked ward, on orders of her doctor, who felt that her condition required this precaution. On the morning of her death Miss Thelen was taken, for her bath, into the "open" part of the hospital, from which she had access by corridors to the porch over the roof of the enclosed outside passageway.

It is our opinion that the circumstances surrounding Miss Thelen's death, and the history of her mental troubles,

establish conclusively that her death was the result of suicide, or at least was the result of mental infirmity. While there may be a presumption against suicide, that presumption has no force other than to shift the burden of proof, and we are convinced that the insurance company here fully met the burden. As stated in Aetna Life Ins. Co. v. Tooley, 5 Cir., 16 F.2d 243, at page 244:

> " * * * the presumption against suicide is overcome, where the preponderance of the evidence is consistent with the theory of suicide, and is at the same time inconsistent with any reasonable hypothesis of death by accident or by the act of another."

It must be remembered that the plaintiff had the burden on the whole case of proving death by accident, Massachusetts Mut. Life Ins. Co. v. Bush, 236 Ky. 400, 33 S.W.2d 351, and in view of the evidence introduced by the defendant, the plaintiff's presumption disappeared. This left the plaintiff with no proof, but only a mere conjecture or suspicion, that the death occurred by accident. See North American Acc. Ins. Co. v. West, 245 Ky. 316, 53 S.W. 2d 692.

The appellant argues that Miss Thelen probably was afraid of the electric shock treatments, and suggests that it is possible that she was seeking some way of escape from her nurse, and having climbed out on the roof of the passageway in search of an entrance to the other part of the hospital, accidentally fell from the roof. This theory is definitely in the realm of speculation, and is hardly acceptable as reasonable speculation because of the fact that Miss Thelen was a voluntary patient and was free to leave the hospital if she wished, and, having been confined in the hospital for a number of days on two different occasions, she should have been familiar with the normal routes of egress. At the least, what the appellant suggests that Miss Thelen may have done would not have been a rational thing to do.

Appellant relies upon Couadeau v. American Acc. Co. of Louisville, 95 Ky. 280, 25

S.W. 6, Union Casualty & Surety Co. v. Goddard, 76 S.W. 832, 25 Ky.Law Rep. 1035, and Sovereign Camp, W. of W. v. Valentine, 173 Ky. 182, 190 S.W. 712, in support of the argument that the case should have been submitted to the jury. In none of those cases was there evidence of suicidal tendencies or threats on the part of the deceased, and the manner of death was equally consistent with accident as it was with suicide. In addition, those cases preceded the abolition of the scintilla rule in Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877.

The judgment is affirmed.