68 So.2d 43

**SORROW**

v.

**INDUSTRIAL LIFE & HEALTH INS. CO.**

**6 Div. 983.**

Supreme Court of Alabama.

Oct. 29, 1953.

Hare & Parsons and R. Clifford Fulford, Birmingham, for appellant.

546

H. H. Grooms and Spain, Gillon, Grooms & Young, Birmingham, for appellee.

PER CURIAM.

Appellant was plaintiff in the circuit court, suing appellee on a policy of life insurance on the life of her late husband.

The defense was that of suicide within two years after the issuance of the policy. The policy provided that if insured should take his own life within said period defendant shall be liable for a sum equal to the premiums that have been paid thereon and no more. This amount was claimed to be $216.01 which had been tendered.

There was a jury and verdict for defendant on the issue of suicide. There was no contention but that he died within two years after the issuance of the policy. The circumstantial evidence tended to prove suicide.

The first assignment of error goes to the act of the court in overruling plaintiff's objection to a certificate headed: "Jefferson County Board of Health: Bureau of Records and Vital Statistics: Birmingham, Alabama". "Standard Certificate of Death" "State of Alabama". A blank form was used with the information inserted apparently with a typewriter. It is signed in the name of the health officer by "Geo. V. Truss, Registrar of Vital Statistics". This document contains what purports to be a "medical certificate" with the name of J. G. Galbraith, M. D., written also with the typewriter. The first part of it material to the issue of suicide was what purports to be an answer to the inquiry of the "immediate cause of death", to be "gunshot wound of brain", and in answer to whether it was an accident, suicide or homicide, stated "suicide".

The second assignment of error relates to that feature of the document which specifies "suicide" as the cause of insured death.

The third assignment of error is the alleged error of the court in charging the jury that they might consider the death certificate as prima facie evidence of suicide: to which there was no exception.

So that, in this connection the question relates to assignments of error one and two, supra, and they relate only to the question of the admissibility in evidence of the certified copy of the record of the bureau of records and vital statistics, as to the cause of the death of insured as suicide.

Title 22, §§ 25 and 42, as amended by the Act of July 9, 1943, seem to influence the question presented by assignments of error one and two, supra. Section 22 of Title 22 provides for a local registrar of vital statistics. Section 23 requires a burial permit to be issued by the local registrar for the burial of a dead body. Section 25 as amended by the Act of July 9, 1943, Pocket Part Code, requires as a condition to the burial permit, supra, a certificate of death. The undertaker shall obtain such certificate upon information from a person best qualified to supply it to be signed by the informant. The undertaker shall present the certificate to the attending physician, if any, for a medical certificate of the cause of death and other particulars. He (the undertaker) shall then state the facts required relative to the date of death, date and place of burial or other disposition, with his signature, and present the completed certificate to the local registrar. Only upon those requirements may the local registrar issue the necessary burial permit. The medical certificate shall specify various matters, including the cause of death. If the cause of death be violence it shall be carefully defined, and the means shall be stated and whether (probably) accidental, suicidal or homicidal. Section 23, supra, appears to give detail of requirements to obtain a burial permit from the local registrar.

Assignments of error 1 and 2 have reference to the certificate of death by the health officer acting by the registrar of vital statistics, which contains a copy of the doctor's certificate. This certificate is controlled by sections 25 and 42, Title 22, as amended, and recites that it is issued under that authority. No objection was made as to its due execution. Objection was made to it as a whole (record page 157), and to the answer to 22(a), "accident, suicide or homicide", on general grounds and because it is a conclusion invading the province of the court and jury, and because no official certificate of the coroner appears, for that the city detective making the coroner's report was not so authorized nor qualified and did so without investigation, and it is no

part of the death certificate offered in evidence made by the health officer.

The objection so made was overruled and exception noted. The court thereupon explained to the jury that although "that is an official looking document with a seal it is not conclusive. It is just evidence like everything else to be considered by you, but because it does have that seal and certificate, it is not conclusive, and you are not bound by it. You are to consider it like you would any other evidence." In the court's oral charge at the conclusion of the evidence he stated to the jury that "the defendant has introduced in evidence a certified copy of the death certificate which is on file in the bureau of vital statistics of this county"; and "the introduction of that certificate makes out what we call from a legal standpoint, a prima facie case"; explaining that term to mean "not as an absolute proof of it, but that established the fact there was, according to the official records, a suicide, and unless the other testimony overcomes it, then that would be the conclusion you would reach. But that is not conclusively on you as I stated to you at the time it was introduced. It is merely evidence and prima facie evidence, although it is prima facie evidence, it is (not even) a little bit more than ordinary evidence, it can still be rebutted by all the other testimony in this case."

There was no exception to that feature of the court's charge. But it is pointed out in the fourth assignment of error that this statement to the jury is the eighteenth ground of the motion for a new trial. But it cannot be error to reverse when no exception was taken to it by plaintiff seeking the reversal. Guy v. Lancaster, 250 Ala. 287, 34 So.2d 499.

Moreover, the argument as to this assignment is based upon the principle urged in brief that the certificate was not admissible. The chief controversy is as to the admissibility of that part of the certificate of the health officer, contained in what purports to be a copy of the certificate of Dr. Galbraith in answer to inquiry No. 22 (a) that death was by suicide.

No question is raised on the certificate of death as to its due execution by the proper county authority. Prudential Ins. Co. v. Calvin, 227 Ala. 146 (5), 148 So. 837. See amendment of July 9, 1943 to section 42, supra. The certificate recites that it is issued by authority of section 42, Title 22, as amended. That statute provides that such certificate "shall be prima facie evidence in all courts and places of the facts therein stated", and it authorizes the county health officer to make the certificate.

It is urged that whether the death was by suicide is not a fact stated in the death certificate sufficient to be prima facie evidence of suicide. The certificate of death contains a copy of what purports to be a certificate of Dr. Galbraith, as we have said. The law (section 25, supra) is that the attending physician (Galbraith), if any, should have certified in order to obtain a burial permit. Such certificate is then a matter of record with the board of vital statistics. It is therefore a proper feature of the certificate provided for in section 42, supra, and of the facts recited in it. The record does not otherwise show the certificate which the doctor filed.

There was shown to have been a policy of insurance on the life of decedent in the Columbian Mutual Life Insurance Company, and that plaintiff made proofs to that company showing death by suicide, to which was attached a certificate by one signing as acting coroner, that death was by suicide. Such proofs are only in the nature of admissions by plaintiff who furnished this proof. Cotton States Life Ins. Co. v. Crozier, 216 Ala. 537, 113 So. 615 (4); National Life & Accident Ins. Co. v. Puckett, 217 Ala. 110, 115 So. 12.

We revert to the question of whether the death certificate purporting to set out a copy of the doctor's certificate showing suicide is prima facie evidence of suicide. Section 25, Title 22, Code, as we have said, requires the doctor's certificate to state the cause of death and "whether (probably) accidental, suicidal, or homicidal." So that his statement that it was a suicide was of a fact of which he was required by law to certify and did so. We have a line of cases holding that a certificate, such as here involved, is prima facie evidence of suicide by reason of the statute, section 42, supra.

Birmingham Trust & Savings Co. v. Acacia Mutual Life Ass'n, 221 Ala. 561, 130 So. 327; Fleetwood v. Pacific Mutual Life Ins. Co., 246 Ala. 571, 21 So.2d 696, 159 A.L.R. 171; Jefferson Standard Life Ins. Co. v. Wigley, 248 Ala. 676, 29 So.2d 218. Section 386, Title 7, Code, is consistent with this theory.

There is a difference of opinion among the courts of other states as to whether the certificate that the cause of death was suicidal is of a fact of which the certificate is prima facie evidence. Some of the cases holding that it is prima facie evidence of suicide under such a statute are Hamilton v. Metropolitan Life Ins. Co., 71 Ga.App. 784, 32 S.E.2d 540; Branford Trust Co. v. Prudential Ins. Co., 102 Conn. 481, 129 A. 379, 42 A.L.R. 1450. See 32 C.J.S., Evidence, § 638, pages 497, 498, notes 75 and 76; 159 A.L.R. 191. Kentucky seems to have been unsteady in its views on the subject: first holding that under such a statute a certificate as here involved was prima facie evidence of suicide, Massachusetts Mutual Life Ins. Co. v. Bush, 236 Ky. 400, 33 S.W. 2d 351, which was supported by Prudential Ins. Co. v. Ashley, 265 Ky. 281, 96 S.W.2d 766. But it is said in Kentucky Home Mutual Life Ins. Co. v. Watts, 298 Ky. 471, 183 S.W.2d 499, that the soundness of the construction given the statute in the Ashley case had been questioned but not determined in Prudential Ins. Co. v. Tuggle's Adm'r, 254 Ky. 814, 72 S.W.2d 440. The Ashley case was overruled without mentioning the Bush case, supra. Why the Bush case was not also overruled is not clear. Kentucky is therefore presumably among those courts who do not give effect to such a statute. There are many other cases holding that such a certificate is not evidence of suicide, though it so recites. Morton v. Equitable Life Ins. Co., 218 Iowa 846, 254 N.W. 325, 96 A.L.R. 315; 32 C.J.S., Evidence, § 638, page 498, note 77.

■ But this Court has adhered to the view that under our statute, a certificate as provided for in section 42, supra, showing death by suicide is prima facie evidence of that cause producing death.

Counsel for appellant have presented an interesting and resourceful brief on that question, inviting in effect a reconsideration of it. But it is a question which could be decided either way. Our cases should stand with respect to it. Since the Acacia case, supra, the statute with that construction has been readopted by the Code of 1940 and amended by an Act approved July 9, 1943, Gen.Acts 1943, page 464, without change in the respect here material.

■ There is no doubt of the legislative power to enact that the certificate shall be prima facie evidence of the facts recited. Massachusetts Mutual Life Ins. Co. v. Bush, 236 Ky. 400, 33 S.W.2d 351; Bozicevich v. Kenilworth Mercantile Co., 58 Utah 458, 199 P. 406, 17 A.L.R. 346.

### Assignments of Error 5, 6, 7 and 8.

■■ After the admission of the death certificate by the health officer, plaintiff offered a certificate of later date bearing Dr. Galbraith's signature stating that the cause of death, as to suicide, homicide or accident, was undetermined. Objection was sustained. That certificate was a part of the proofs furnished by the beneficiary, plaintiff, to the insurer defendant under the terms of the policy. It was not admissible in evidence for plaintiff, but only as an admission by plaintiff against her interest when offered by defendant. Cotton States Life Ins. Co. v. Crozier, supra; National Life & Accident Ins. Co. v. Puckett, supra. The death certificate of the health officer containing a certificate of suicide by Dr. Galbraith cannot in that manner be impeached. General grounds of objection were sufficient to sustain the ruling of the court. Holt Lumber Co. v. Givens, 196 Ala. 640, 72 So. 257.

### Assignment of Error No. 9.

The charge here referred to is No. 10 given by the court at the request of defendant. It is a substantial copy of charge No. 4 held in the Acacia and Fleetwood cases, supra, to have been given without error. Here the argument is, as before stated, in effect that the Fleetwood case should be overruled. We are not inclined to do so.

Finding no reversible error assigned and argued, the judgment should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this

550

Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and CLAYTON, JJ., concur.