Robert M. LOWE, Jr., Administrator of the Estate of Willie Lewis, deceased, Appellant,

v.

James Ralph McMURRAY and Fleet Transport of Kentucky, Appellees.

Court of Appeals of Kentucky.

March 10, 1967.

John E. Wise, Louisville, for appellant.

Carl L. Wedekind, Jr., Stites, Peabody & Helm, Louisville, for appellees.

DAVIS, Commissioner.

Willie Lewis died as the result of injuries sustained by him when a passenger car he drove was in collision with a tractor-trailer outfit operated by appellee McMurray. A jury returned its verdict for appellee McMurray upon the trial of the wrongful death action. Appellant maintains that the judgment should be reversed because of asserted erroneous rulings relating to evidence and instructions offered by appellant.

The accident occurred November 11, 1963, at approximately 7:38 p. m. The site of the accident was the intersection of Crittenden Drive and Phillips Lane in Louisville. Crittenden Drive runs in a north-south direction. Lewis was operating his car southwardly on Crittenden, and undertook to turn to his left into Phillips Lane. McMurray was driving northwardly on Crittenden and intended to maintain his direct course on that street. Lewis turned left across the path of McMurray.

There are five traffic lanes on Crittenden north of its intersection with Phillips Lane; there are only three traffic lanes on Crittenden south of its intersection with Phillips Lane. The evidence reflects that McMurray was driving in the extreme right (easternmost) lane as he travelled northwardly on Crittenden, while Lewis was using the middle of the five lanes as he approached the intersection. The five lanes were provided with "pinball" traffic lights at the time of the accident. These lights were so activated as to afford two "go" or green southbound lanes (the westernmost lanes). The middle lane presented an amber or "caution" light to traffic, and the two easternmost lanes were designated as "red" for southbound traffic, affording two lanes for northbound traffic. It was shown that it is normal for southbound drivers intending to turn left off Crittenden to utilize the middle lane as Lewis was doing. McMurray testified that he was familiar with that practice, but that Lewis gave no visible signal of his intention to turn left.

The testimony fixed the point of impact within the intersection of Crittenden and Phillips. The impact point was in the path which McMurray's tractor-trailer unit would have travelled as it proceeded directly in the easternmost lane. The Lewis car was struck in its right side, and was carried by the tractor-trailer unit in a northeasterly direction until it came to rest against a store building on the northeast corner of the intersection; a telephone booth was demolished as the vehicles struck it before coming to rest. Some chips were knocked from the concrete curbing by one or both of the vehicles.

An officer who investigated the accident related that he found skid marks at the scene, which he was able to trace to the tractor-trailer unit, and identify as having been laid down by that vehicle. He said the skid marks were approximately 78 feet long "* * * from the point where they began to the point where the truck ended up." The officer said that the point of impact was 54 feet from the corner of the building against which the Lewis car came to rest. He said that he found 30 feet of skid marks from the point of impact to the front wheels of the tractor-trailer; he measured the marks as 48 feet from their point of origin to the point of impact. The officer fixed the starting point of the skid marks as three or four feet south of the southern crosswalk at the intersection of Crittenden and Phillips.

McMurray was the only eye witness to testify. His evidence substantially corroborates the points and distances as explained by the officer. McMurray said that he had been travelling at about 35 mph and that when he first noticed the Lewis car it was about as far north of the intersection as he was south of it. He estimated that each vehicle was about 150–200 feet from the intersection. The weather was clear and the roadway was dry. Although it was dark, visibility was good and the intersection was well lighted. An automatic electric traffic signal at the intersection was in the "go" position for traffic on Crittenden; there was no special turning arrow provided by the signal. McMurray testified that he was within 5 or 10 feet of the intersection when Lewis turned left suddenly across his path. McMurray said he was about 50 feet from the point of impact when Lewis turned in front of him. McMurray's trailer was loaded with liquid latex. It was not a full load, but only about 75–85% full.

■ The appellant presented three witnesses who gave avowal testimony relating to skid marks and chips or gouge marks on the concrete curbing. The trial court rejected the proffered testimony. It was shown that one of the three witnesses had visited the accident scene shortly after the collision, but had made no inspection of the area at that time. Then the same witness, with two others, returned to the scene some four to six hours later. At this time they located some tire marks of which they offered to testify. They were not able to

trace these marks to the McMurray tractor-trailer, nor could they say that the marks had not been laid down by some other vehicle. Photographs used on avowal, and marked by one of the witnesses as reflecting his opinion of the marks, indicate that the witness was undertaking to assign marks to McMurray's vehicle which had no plausible connection with that vehicle. It was shown that much traffic used the roadways at the accident site between the time of the accident and the time of the inspection by the three avowal witnesses. We hold that the trial court correctly excluded the proffered evidence. See Mountain Petroleum Company v. Howard, Ky., 351 S.W.2d 178, 180; 3 Ky.Digest, Automobiles, ☞243(14).

■ These same witnesses sought to testify about some chips out of the concrete curbing. They were not able to positively say that the chips had resulted from the force of either of the vehicles. But we need not decide whether the trial court should have admitted their testimony on this point, because its rejection could not have been prejudicial. At best, their evidence about the chipping of the concrete would have been cumulative of the evidence of the police officer. Moreover, the testimony would have tended only to show something of the force of the collision; that physical fact was abundantly demonstrated by the demolition of the Lewis car, the destruction of the telephone booth, the damage to the store building, and the extensive and fatal injury to Lewis. If the court erred in rejecting the evidence, which we do not decide, it was not prejudicial and may not be made the ground for reversal. CR 61.01.

■ Appellant presented a witness whom he sought to qualify as an expert in the matter of the braking of tractor-trailer units partially loaded with liquid cargo. The witness avowed that a unit comparable to McMurray's would not lay down a skid mark when its brakes were applied at 35 mph; he modified this to say that the skid mark would be very short. He testified

that he had made no experiments in this field, nor had he ever looked to see whether skid marks were laid down in such circumstances. The trial court was of the view that the witness failed to evince sufficient training, special knowledge or skill as would qualify him to speak as an expert. We think the court was correct in this ruling. The witness failed to present adequate qualifications to entitle him to speak as an expert in the field at hand. But even if he had, it seems to us that the evidence would have been irrelevant. Supposedly the purport of the tendered evidence would be to raise an inference of excessive speed on McMurray's part. But even if it had been shown that McMurray was violating the speed limit that fact would not suffice to absolve Lewis from contributory negligence in turning in front of him—unless it could have been shown that Lewis had no reasonable opportunity to realize the speed of the oncoming vehicle. There was no showing that such a situation prevailed here. Cf. Wandling v. Wandling, Ky., 357 S.W.2d 857; Rankin v. Green, Ky., 346 S.W.2d 477.

■ The final assault upon the judgment is based upon appellant's contention that the trial court should have affirmatively instructed the jury that the decedent was presumed not to voluntarily do or fail to do anything to put his life in jeopardy. The question of such presumptions was fully discussed in Louisville & Nashville Railroad Co. v. Fisher, Ky., 357 S.W.2d 683, 688. We are cited to no authority which suggests that the court should instruct on such a presumption. The presumption rule would not be applicable in the present case in any event, as there was an eye witness to Lewis' negligent conduct; the eye witness was strongly corroborated by the physical facts. But in any event, it is never proper to instruct the jury as to presumptions of law or of fact. See Pacific Mut. Life Ins. Co. v. Meade, 281 Ky. 36, 134 S.W.2d 960, 965; Massachusetts Mut. Life Ins. Co. v. Bush, 236 Ky. 400, 33 S.W.2d 351, 353.

Having this view of the case, it becomes unnecessary to consider the propriety of the rejection of evidence offered by appellees.

The judgment is affirmed.

All concur.