COMMONWEALTH LIFE INSURANCE COMPANY, Appellant,

v.

Dora Mae AUXIER, Appellee.

Court of Appeals of Kentucky.

May 28, 1971.

Rehearing Denied Oct. 1, 1971.

J. K. Wells, Wells & Wells, Paintsville, for appellant.

Robert J. Greene, Perry & Greene, Paintsville, for appellee.

DAVIS, Commissioner.

Shortly after 5 a. m. on June 10, 1969, Clarence Auxier died as the result of a pistol wound in his forehead. At the time of his death Auxier had an insurance policy issued by the appellant, which afforded insurance coverage of $1,000 in case of his death by natural cause and $4,000 coverage in case of accidental death. The policy provided that:

"No accidental death benefit will be payable, but the benefit for natural death will be payable, in each of the following cases: * * * (3) if the injury or death is caused or contributed to by (a) self-destruction, whether sane or insane * * *."

Auxier shot himself either deliberately or accidentally. His widow, the appellee, successfully asserted in the trial court that the death was accidental, entitling her to the enhanced payment provided by the policy for accidental death. The insurance company contends that it was entitled to a directed verdict and judgment n. o. v. because there was no evidentiary basis for a finding of accidental death vis-a-vis a finding of suicide.

At the time of his death Clarence Auxier was thirty years old, had been married for eight years, and was the father of two children, ages six and seven. So far as appears, he had had no illness. However, he was unemployed and awaiting trial on two indictments, one for grand larceny and the other for striking and wounding another with a deadly weapon.

Mrs. Auxier, the appellee and widow of Clarence, testified that Clarence came home about 5 a. m. on the day of his death. He called to her, and she let him in the three-room residence they occupied. She and the decedent proceeded to the bedroom where Mrs. Auxier had slept with their small son. Clarence was "drinking" but able to walk and talk. He engaged his wife and son in conversation for about twenty minutes, although the record does not disclose any particular topic of that conversation except that the decedent stated that his brother was to come by for him, and decedent asked his wife to arouse their small daughter so he could speak to her before leaving with his brother.

During the twenty minutes, decedent had in his hands a .38 caliber Smith & Wesson revolver. He cocked and uncocked the piece and toyed with it, although his wife asked him to put it away. The wife went to arouse the little girl, but before she could do so heard the report of one shot

from the pistol. It was the fatal shot. The little boy had accompanied his mother as she went to awaken the other child, so there was no one in the bedroom except Clarence Auxier when the fatal shot was fired.

In describing the circumstances, Mrs. Auxier testified:

"And he sat down on the bed and he had the gun out handling it and changing it from one hand to the other. He had it cocked and dropped it a time or two. I tried to get him to let me pick it up, and he wouldn't let me do it, and he said his brother was coming after him, and he wanted me to get the little girl up, and he had the gun in his hand, and I went to get her, and when I got middleways of the room where she was sleeping, I heard the gun and I run back and when I seen the blood, I didn't go any further, and I called my brother."

Mrs. Auxier's brother testified that he found decedent "sitting on the edge of the bed." According to the witness, decedent was "bowed over, and the gun was laying down at his feet with the barrel pointing from him." The bullet had not emerged from the skull.

A detective of the state police, testifying to qualifying training and experience in such matters, said that he examimed the body and found a fatal bullet wound "directly in between the eyes." He said he found both internal and external powder burns, and expressed the opinion that the muzzle of the pistol was within three inches of the forehead when the shot was fired. This conclusion was based on the nature of the powder burns. The same witness described the angle of entry of the bullet as "a level angle; straight * * * right straight back."

Decedent's brother was not presented as a witness, although Mrs. Auxier had said that decedent had spoken of his brother's plan to come by after him.

In order to present a submissible jury issue, it was incumbent on the appellee, as plaintiff, to adduce evidence, direct or circumstantial, sufficient to sustain a verdict for appellee. In testing whether appellee did meet that burden, the court will consider all inferences that fairly and reasonably may be drawn from the evidence. If the evidence, considered with the proper inferences to be drawn from it, requires a finding based only on speculation or conjecture, it is not sufficient to warrant submission of the case to the jury. Neither is a plaintiff entitled to go to the jury if the evidence in his behalf consists of alleged facts and inferences which are inherently impossible and contrary to well-established physical laws, or where the physical facts are of such character as to make the evidence unbelievable. The jury will not be permitted to impose liability on a defendant if the basis for relief asserted may as reasonably be attributed to a cause for which the defendant is *not* responsible as to one for which the defendant *is* responsible. The principles just stated find support in many decisions, among which are Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877; Harris v. Cozatt, Inc., Ky., 427 S.W.2d 574; Schuster v. Steedley, Ky., 406 S.W.2d 387; Miller v. Watts, Ky., 436 S.W.2d 515; Donahue v. Simms, Ky., 419 S.W.2d 154; Klingenfus v. Dunaway, Ky., 402 S.W.2d 844; United Electrical Coal Companies v. Brown, Ky., 354 S.W.2d 502. The rules are well established; the difficulty comes in seeking appropriate application of them in a particular case.

The parties recognize that there is a presumption against suicide. The company contends that the reasonable probabilities of the evidence point unerringly to suicide as the cause of death. If so, says the company, the presumption is out of the case and has no evidentiary value. Cited in support of that proposition are Prudential Insurance Company v. Tuggle's Adm'r, 254 Ky. 814, 72 S.W.2d 440; Massachusetts Mutual Life Insurance Company v.

Bush, 236 Ky. 400, 33 S.W.2d 351; Thelen v. Mutual Life Insurance Company of New York, Ky., 261 S.W.2d 427; and Prudential Insurance Company v. Redwine, Ky., 332 S.W.2d 643. Many cases dealing with the same problem are analyzed in the annotation beginning at 85 A.L.R.2d 722. The substance of the holdings seems to be aptly expressed in Aetna Life Insurance Company v. Tooley, 5 Cir., 16 F.2d 243, at page 244 (quoted with approval in Thelen v. Mutual Life Insurance Company of New York, Ky., 261 S.W.2d 427):

" * * * the presumption against suicide is overcome, where the preponderance of the evidence is consistent with the theory of suicide, and is at the same time inconsistent with any reasonable hypothesis of death by accident or by the act of another."

As noted in *Thelen,* the plaintiff had the burden on the whole case of proving death by accident. If the presumption against suicide was *destroyed* by the evidence, then it disappeared from the case and left the plaintiff with only a conjecture or suspicion that the death was caused by accident.

There was no direct evidence of an intention to commit suicide. The powder burns and the angle of the bullet's entry furnish basis for a *belief* that the wound was deliberately inflicted, but those circumstances are not totally inconsistent with any reasonable hypothesis of death by accident. The appellee suggests in her brief that the cocked pistol may have slipped from decedent's hand, and then have been accidentally discharged by him as he clumsily leaned over to retrieve it from the floor. In this manner, suggests the appellee, the decedent's forehead could have been very near the muzzle of the pistol when the shot was fired, accounting for the powder burns, and even the angle of entry.

Such an occurrence may seem unlikely. However, the court is unable to characterize that possibility as such an unreasonable hypothesis as to entitle the issue to be de-

termined as a matter of law. The hypothesis advanced by the appellee is not physically impossible. In such circumstances, the force of the evidence was not so great as to destroy the effect of the presumption against suicide. Hence, the court properly submitted the issue to the jury.

The judgment is affirmed.

MILLIKEN, C. J., and HILL, OSBORNE, PALMORE, REED and STEINFELD, JJ., concur.

NEIKIRK, J., not sitting.