(123 So. 94)

## PENN MUT. LIFE INS. CO. v. COBBS.
### (6 Div. 447.)

Court of Appeals of Alabama.   May 14, 1929.

Rehearing Denied June 18, 1929.

Percy, Benners & Burr, of Birmingham, for appellant.

Black & Fort and G. Ernest Jones, all of Birmingham, and W. T. Seibels and Weil, Stakely & Cater, all of Montgomery, for appellee.

SAMFORD, J. For convenience, we adopt the clear and concise statement of the case made by appellant, and in discussing the rulings of the court we follow the outline suggested in its brief.

The complaint is in Code form for the recovery of past-due monthly payments on a policy of insurance, in the principal sum of $10,000 insuring the life of Herbert L. Cobbs, a son of plaintiff.

Appellant, hereinafterwards referred to as defendant, in addition to the general issue, filed special pleas; these pleas as involved in this appeal are No. 3 and pleas 9 to 13, inclusive. Plea No. 3, with appropriate averment, relied upon the following provision of the policy: "Suicide. If the insured whether sane or insane shall commit suicide within one year from the date of issue of this policy, the liability of the company shall be limited to the amount of the premium paid hereon." The plea was accompanied by tender in court of the amount due to plaintiff under the terms of the policy. There was a joinder of issue on this plea, and the sole question raised under the plea was a question of fact as to whether or not Cobbs committed suicide.

Pleas 9 to 13, inclusive, aver that Cobbs made a written application to the defendant for the issuance of the policy of insurance sued upon; that said application, over the signature of the said Cobbs, contained the following statement: "My statements and answers to the questions and answers printed above, and my statements and answers made and given to the company's medical examiner are full, complete and true; upon them I base my application for insurance and agree that they shall be regarded as a part of the contract if, and when, issued." The pleas aver the making by Cobbs of false answers to the questions inquiring, first, as to the previous attendance of physicians upon him (pleas 9 and 10); and, second, as to whether or not he had previously had certain named diseases (pleas 11, 12, and 13). Pleas 9 and 11 aver that Cobbs made the false answers with intent to deceive the defendant, while 10, 12, and 13 aver the effect of the false answers was to increase the risk of loss. All of the pleas were accompanied with a tender of premium paid.

With the exception of the pleas noted above, all the other pleas were either withdrawn or were held insufficient on demurrer by the court.

Plaintiff filed a special replication to pleas 9 to 13, inclusive, seeking to set up a waiver by the defendant of its right to defeat the policy on the ground of the false representations, for the reason that "after the death of the insured Herbert L. Cobbs, and before the filing of this suit, defendant denied liability on said policy set forth and sued upon, and assigned as the sole and single ground of said denial that the insured died as the result of suicide." Defendant's demurrer to special replication No. 2 was overruled by the court. Defendant, in reply to special replication No. 2, filed rejoinders 3 to 7, inclusive; these rejoinders, in substance, averred that, at the time it denied liability on said policy set forth and sued upon, and assigned as the sole and single ground of said denial that the insured died as a result of suicide, it did not have any knowledge of the fact that the representations made by the insured in his application for said policy of insurance were untrue, and that it did not have any knowledge of facts which, if pursued, would have resulted in knowledge of the untruthfulness of said representations. Plaintiff's demurrer to these rejoinders was overruled, and issue was joined.

It will therefore be seen that, briefly stated, the pleadings in this case present three questions:

One: Did Herbert L. Cobbs commit suicide?

Two: Did Herbert L. Cobbs in his written application for insurance make false representations in reference to the previous attendance of physicians or to the previous condition of his health, and were these false representations made either with the actual intent to deceive the defendant, or, if made mistakenly or honestly, did such misrepresentations increase the risk of loss?

Third: Did the defendant, at the time it declined liability on the ground of suicide, waive the right to insist on the breaches of warranty by reason of false representations, because it then had knowledge, or was chargeable with knowledge, that these false representations had been made?

There are assignments of error relating to pleadings, but we have decided to confine our discussion to the other assignments of error, all of which may be grouped and discussed under three major subdivisions:

I. Errors relating to the defense of suicide.

II. Errors relating to the defense of false representations.

III. Errors relating to questions of evidence; the court's ruling thereon; its charge in reference thereto.

Taking up, then, the assignments of error relating to the defense of suicide: The dead body of Cobbs, the insured, was found in his room on the sixth floor of the Birmingham Athletic building on the 23d day of February, 1926, at 9 o'clock a. m. He was dressed in B. V. D.'s only. His pajamas were hanging up. His bed had been occupied. The body was lying on its back on the floor, between the bed and door. There was a .38 caliber Smith & Wesson pistol lying near the right hand, with one empty chamber and one cartridge freshly fired. A bullet hole, evidently from the pistol shot, entered the right temple, passing through the head and coming out through the left ear. It is quite evident that Cobbs died as a result of the wound from the pistol; that the pistol was and had been in his possession; and that the pistol had been fired at close range. As supporting the theory that Cobbs intentionally fired the shot that took his life, defendant offered testimony tending to prove that Cobbs had, for several months, been under treatment for a venereal disease, which ended February 20, 1926, in a cure; that he owned about $2,800; that his immediate superior in the company for which he was working had, about six weeks prior to Cobbs' death, a talk with him expressing dissatisfaction with his work; that after this talk Cobbs apparently improved; that for some reason not given Cobbs failed to report for duty on the morning of February 23d after having been especially instructed to do so; that in August and September prior to his death Cobbs had applied for and obtained three policies of life insurance for $10,000 each, in each of said applications there were false representations as to material matter regarding the health, etc. of Cobbs; that at the time of the taking out of the three policies Cobbs was suffering much pain and inconvenience from the disease, and on one occasion expressed himself as contemplating taking his life and ending it all. On the contrary, plaintiff's evidence tended to rebut any inferences to be drawn from the above circumstances unfavorable to Cobbs. For instance, the evidence for plaintiff tends to prove that Cobbs was a bachelor in the prime of life, of an unusually cheerful and happy disposition, a delightful personality, with no dependents or incumbrances. He held an important position with the company for which he had been working for 16 years, drawing a salary of $350 per month; that the only impairment of his health was the venereal disease referred to, that it was local, not dangerous to health or life, and at the time of death he had been completely cured; that he was prominent and highly thought of in club and fraternal life, and that on the afternoon before his death he was cheerful and friendly with friends with whom he was in swimming; that he not only stood well with the company for which he was working, but was especially

friendly with his immediate superiors. It is further shown by the evidence that each of the policies of life insurance contained a clause providing that they would become void if insured should commit suicide within one year of issue, and plaintiff offers evidence that it was only after repeated solicitation by agents of the insurance companies that Cobbs was induced to apply for the insurance contracts above referred to.

■■ Suicide was a felony at common law, and in Alabama is a crime involving moral turpitude. 4 Mitchie's Digest, 119, § 182. The burden of proving suicide being on the defendant, it will be seen at once that the defendant enters upon this issue with two important presumptions to overcome, which it must do by such a preponderance of the evidence as to reasonably satisfy the jury, not only that Cobbs came to his death by his own hand, but that he had at the time the felonious intent to take his own life. The first of these presumptions is that of innocence, which obtains in every trial where the criminal intent is one of the issues. Our courts have held over and over again that the presumption of innocence attends a defendant charged with crime, as an evidentiary fact, during the trial until such time as the state by competent testimony has overturned that presumption beyond a reasonable doubt. Rogers v. State, 117 Ala. 192, 23 So. 82. This being a civil case, the above rule would be modified to the extent that the proof necessary to overcome the presumption of innocence would be, to the reasonable satisfaction of the jury.

■ The second of these presumptions is even stronger than the first. Based upon experience and common knowledge, we know that every instinct of a normal animal of any species is opposed to self-destruction. While we are confronted now and then with instances of self-destruction by human beings, no rule of law is better known or more fully recognized than that the presumption against suicide is evidentiary, and is only to be overcome by proof which will, in the minds of the jury outweigh such presumption. Standard Life & Accident Ins. Co. v. Thornton (C. C. A.) 100 F. 582, 49 L. R. A. 116.

■■ We do not mean to say that suicide cannot be established by circumstantial evidence, but we do lay down the rule as applicable to any case, either civil or criminal, that, where a felonious intent is involved, and the facts relied on to prove the act are circumstantial, the intent with which the act was done is a question for the jury, to be determined from all the facts and circumstances surrounding the transaction. Love v. State, 16 Ala. App. 44, 75 So. 189; Brown v. State, 142 Ala. 287, 38 So. 268; Jackson v. State, 94 Ala. 89, 10 So. 509; Wigmore Ev. § 300.

Where the facts, as here, are circumstantial, the law indulges the presumptions in favor of the innocence of the insured, until the evidence of suicide is so strong and convincing as to exclude every other reasonable hypothesis than that the insured alone is guilty. McKenzie v. State, 19 Ala. App. 319, 97 So. 155.

■ Combining the presumptions against self-destruction with the other facts offered by plaintiff tending to disprove any motive for the act, but on the contrary evidencing every reason to live, we are clear to the conclusion that the court committed no error in its rulings on the issue of suicide. In the case of Sovereign Camp, W. O. W., v. Dennis, 17 Ala. App. 642, 87 So. 616, in the opinion on rehearing has been stated the rule in this state, as we understand it. The writ of certiorari in that case was denied. Id., 205 Ala. 316, 87 So. 620, and the decision was followed in New York Life Ins. Co. v. Turner, 213 Ala. 286, 104 So. 643. We see no reason to deviate from the reasoning and conclusions reached in the above case.

Nor do we think the court committed error in overruling defendant's motion for new trial on the ground that the overwhelming weight of the evidence disclosed suicide. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

We have considered the cases cited by appellant in its brief filed in this case. All of these cases are from other jurisdictions in which the rule as to the weight to be given a jury verdict is not the same as in Alabama.

■ One of the questions involving several rulings of the court turned upon whether the application signed by insured and introduced in evidence was a part of the contract of insurance. The plaintiff insists that, in order for an application for a life insurance policy to be regarded as a part of the contract of insurance, it must be either indorsed on the policy or *physically* attached thereto. We think this is too narrow a construction to place upon the language of section 8371 of the Code of 1923. That section provides that: "No life, nor any other insurance company, nor any agent thereof, shall make any contract * * * other than is plainly expressed in the policy issued thereon." In Mutual Life Insurance Co. v. Allen, 166 Ala. 159, 51 So. 877, section 8371 (4579) was accepted as meaning that all agreements between the parties to contracts of insurance as are not plainly expressed in the policy do not bind the parties, though so much of the contract as is so expressed remains unaffected by the part so expressed. In the case of Satterfield v. Fidelity Mutual Life Insurance Co., 171 Ala. 429, 55 So. 200, it was held that the contents of papers incorporated by reference as a part of the policy and attached thereto were expressed in the policy within the meaning of this section. After reciting the above

holdings and citing the above cases, the Supreme Court, in Empire Life Ins. Co. v. Gee, 171 Ala. 435–438, 55 So. 166, 167, continues: "These constructions—and we adhere to them—make the policy, including documents adopted by reference and attached, the sole expositor of the contract between the parties."

The principle seems to be the same as that of the statute which requires contracts for the sale of land to be in writing. New Era Life Association v. Musser, 120 Pa. 384, 14 A. 155. We hold, and we do not think that the holding is in conflict with any of the authorities cited, that, reference being made in the policy to the application signed by the insured, and reference being made in the application to the policy to be issued by defendant and in consummation of the contract of insurance, the policy and the application being delivered to insured at the same time and retained by him as the contract, and identified as such, the application was attached to the policy within the meaning of the statute.

■ Moreover, we are of the opinion, and so hold, that the evidence without dispute or conflict establishes the fact that, at the time the policy was delivered to the insured, the application was *physically* attached to the policy. There is no evidence in this record that points to any other reasonable conclusion. The evidence discloses one, and but one, application to defendant signed by insured for a policy of life insurance such as here issued, a policy issued in exact compliance with the application, a reference to the application in the policy declaring it to be a part of the contract. The policy with the application was placed in the same envelope and delivered to the insured, who retained it until his death, when it passed into the hands of his personal representatives, from thence to plaintiff's attorney, from whom it was obtained on demand in open court. In addition to the above, which we hold is entirely enough, the policy and the application have been sent to this court for our inspection. The policy evidences much handling so as to fix definitely the folds of the paper and riders that have been attached, the application under a magnifying glass discloses a spot of mucilage, and on the policy proper there is a spot of mucilage corresponding in size to that on the application. On placing these two spots together, the folds or creases in the application dovetail and fit exactly the folds in the heavy paper of the policy. From the evidence, there can be no reasonable doubt that the application introduced was in fact at one time physically attached to the policy, and that it was so attached at the time it was delivered to the insured. The rulings of the trial court were not in accord with the foregoing, and for the various rulings on this point, all of which constitute error, this cause must be reversed.

■ Under section 8364 of the Code of 1923, misrepresentations made in an application for life insurance, in order to defeat a recovery upon the policy, must have been made either with the *actual* intent to deceive, or the matter misrepresented must have increased the risks. Under the facts in this case these questions were for the jury. Heralds of liberty v. Collins, 216 Ala. 1, 110 So. 283; Brotherhood of Railway & Steamship Clerks v. Riggins, 214 Ala. 79, 107 So. 44. The case of Miller v. Met. Ins. Co., 214 Ala. 4, 106 So. 335, was based upon an allegation that insured had cancer, a known incurable disease deleterious to health and life, while the instant case reveals a disease common to the male, and known to be curable and not fatal to health or life, and in this case was actually cured.

■ If upon another trial the defendant shall present the defense of fraud in the procurement of the policy under section 8049 of the Code of 1923, its pleas must allege that the false statements were made with the intent to defraud, that they related to matters intrinsically material to the risk, and that the insurer relied upon them. This rule has not been changed by statute, nor, so far as we know, by decision. Nat. Union v. Sherry, 180 Ala. 627, 61 So. 944; Empire Life Ins. Co. v. Gee, 171 Ala. 435, 55 So. 166.

■ The question of a waiver of the defense of misrepresentation in the application as set up in defendant's rejoinder to plaintiff's replication was also a jury question.

Ruling of the court on the admission of evidence and charges given and refused by the court upon the theory that the application in evidence was not a part of the policy or that that question was left to the jury were erroneous.

For the errors indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.