225 So.2d 805

The INDEPENDENT LIFE & ACCIDENT INS. CO. OF JACKSONVILLE, Florida, a Corp.

v.

Nancy E. McGEHEE.

6 Div. 271.

Supreme Court of Alabama.

July 3, 1969.

London, Yancey, Clark & Allen, Birmingham, for appellant.

**396**

Rives, Peterson, Pettus & Conway, Birmingham, for appellee.

COLEMAN, Justice.

The defendant appeals from judgment for plaintiff in action at law on a policy insuring against bodily injury resulting in death through external, violent, and accidental means.[1]

It appears to be agreed that the death of insured resulted from a gunshot wound. There was no eyewitness. A fair statement of the circumstances attending the shooting, as we understand it, is as follows:

Insured was a young, unmarried man under twenty-one years of age residing with his parents. His health was good. He had been employed off and on as a filling station attendant. On the morning he was shot, insured had arisen, shaved, dressed, shined his shoes and eaten breakfast with his family. He, along with his family, was preparing to go to court, along with some other boys to answer a charge of the theft of some automobile parts. Insured went to get a coat which was hanging on a coat hanger on a length of pipe. The pipe was parallel to the floor and was sus-

---

1. The policy recites:
"BENEFIT FOR DEATH BY ACCIDENTAL MEANS, AS DEFINED HEREIN—Upon receipt of due proof that during the continuance of this policy in force the Insured has sustained bodily injury resulting in death within ninety (90) days thereafter through external, violent and accidental means, of which, except in case of drowning or of internal injuries where revealed by an autopsy, there is a visible contusion or wound, on the exterior of the body, death being the direct result thereof, and independent of all other causes, the Company will pay, subject to the Exceptions hereinafter enumerated, to the Beneficiary named in the Schedule the Principal Sum, as hereinafter defined, less any amount paid or payable on account of the same injuries under the provision for Benefit for Loss of Certain Members of the Body."

pended by wires from the ceiling in the corner of another room in the house. Other clothing was also hanging on the pipe. Behind the clothing was a shotgun. A few seconds after insured went to get his coat, one of his sisters screamed. Insured's father found insured lying on the floor trying to get up. The coat, with the hanger still in it, lay on insured's legs and there was blood on his chest. The shotgun was leaning across a foot locker which was beneath the clothing.

About three weeks prior to the day of the shooting, one of insured's brothers had loaded and cocked the gun and replaced it beneath the clothing or behind the clothing. Neither the brother nor the father remembered whether the gun was uncocked before being replaced.

Plaintiff's contention is that insured was accidentally shot when he took the coat off the pipe. Defendant's contention is that insured's death was the result of intentional suicide.

Errors argued are that the trial court erred in refusing written charges requested by defendant and in giving part of the oral charge to which exception was reserved.

### Assignment 10.

Defendant assigns for error refusal of its requested charge as follows:

"18. I charge you, gentlemen of the jury, that if you are reasonably satisfied from the evidence in this case that any witness has wilfully and corruptly sworn falsely as to any material fact, then you, in your sound discretion, may disregard such witness's testimony in its entirety."

This charge was not covered by the court's oral charge or other given charges. As to refusal of such a charge this court has said:

"The defendant asked the court to give this written charge to the jury:

" 'B. If you are reasonably satisfied by the evidence that the plaintiff has willfully sworn falsely as to any material fact in the case, then you may in your discretion discard his testimony.'

"The court refused to give this charge to the jury; *it should have been given by the court.* The proposition of law presented by it is sound. It is supported by so many adjudications of this court that we consider a discussion of it is not required. We will refer to only a few of them. Childs v. State, 76 Ala. 93; A. G. S. R. Co. v. Frazier, 93 Ala. 45, headnote 13, 9 South. 303, 30 Am.St.Rep. 28; Alabama S. & W. Co. v. Griffin, 149 Ala. 423, headnote 18, 42 South. 1034; McClellan v. State, 117 Ala. 140, headnote 7, 23 South. 654." Tennessee Coal, Iron & R. Co. v. Wilhite, 211 Ala. 195, 198, 100 So. 135. .

"13. Several charges were given for the plaintiff, which were to the effect that, if the jury believed from the evidence that certain witnesses for the defendant swore willfully falsely in one particular, they were authorized to disregard the evidence of such witnesses entirely. . .. .· . . The legal proposition asserted in these charges is sound. The jury are . not instructed, or led to conclude,. that they must disregard all the witness' testimony, because they find it to have been willfully false in some material part, but only that they may do so; in other words, they have the right, or are authorized to do so. The proposition is so fully supported by our own adjudications, as not to require extended discussion.—Childs v. State, 76 Ala. 93; Jordan v. State, 81 Ala. 20 [1 So. 577]; Lowe v. State, 88 Ala. 8 [7 So. 97]." Alabama Great Southern Railroad Co. v. Frazier, 93 Ala. 45, 51, 9 So. 303.

"The following charges were requested by the defendant and refused by the court:

" ' . . . . . . . . . .

" '(36) If you believe, from the evidence in this case, that the witness Brown has

willfully and corruptly sworn falsely as to any material fact in this case, you may in your discretion disregard his testimony entirely.'

"  .  .  .  .  .  .  .  .  .  .

"Charge 36, requested by the defendant, should have been given.—McClellan v. State, 117 Ala. 140, 23 South. 653." Alabama Steel and Wire Co. v. Griffin, 149 Ala. 423, 429, 431, 439, 42 So. 1034.

"The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: .  .  .  . (3.) 'The court charges the jury that if they believe from the evidence that Bray willfully and intentionally swore that he did not have the conversations with Crook and Prickett as testified by them, then they may discard all that Bray testified.' (4.) 'One way to impeach a witness is by showing that he made statements out of court contrary to what he swears in court; and if the jury are satisfied that any witness testified willfully and falsely contrary to any statements made by such witness out of court about this matter here testified about, they may discard such testimony.'

"  .  .  .  .  .  .  .  .  .  .

"5. The third instruction should have been given upon the authority of Grimes v. State, 63 Ala. [166] 169; Childs v. State, 76 Ala. 93; Jordan v. State, 81 Ala. [20] 31, [1 So. 577]; A. G. S. R. R. Co. v. Frazier, 93 Ala. [45] 51, [9 So. 303]. The fourth instruction, the original of which has been certified here for inspection, was intended to assert the proposition embodied in the third; it is not very clearly expressed, and for that reason was, perhaps, properly refused; if this be true, upon another trial, the insufficiency may be avoided." McClellan v. State, 117 Ala. 140, 144, 146, 23 So. 653.

Although such a charge has been criticized; Williams v. Palmer, 277 Ala. 188, 168 So.2d 220; the holding in Tennessee Coal, Iron & R. Co. v. Wilhite, supra, and the cited cases, has not been overruled. Charge 3 in Carter v. Chambers, 79 Ala. 223, is not the same as Charge 18 in the instant case. Charge 3 in *Carter* recites:

"'3. If a party introduce a falsehood into his case, this may cast suspicion or distrust of all other evidence introduced by that party.

"  .  .  .  .  .  .  .  .  .  .  '" (79 Ala. at 224)

The charge in *Carter* does not operate against a witness who testifies falsely, but operates against a party who offers false testimony. In holding Charge 3 refused without error, Chief Justice Stone said:

"Charge 3 was rightly refused, for two reasons: First, the record furnishes no testimony which enables us to affirm that a falsehood was introduced in evidence. .  .  .  . There is, however, another reason why this charge was properly refused. The defendant was not present when the alleged declaration was made; and if the statement of the witness was false, nothing is shown which tends to show defendant had knowledge of its falsity. The charge does not embrace knowledge in its hypothesis. If the statement were entirely false, the defendant was blameless, unless he had knowledge it was false.— Childs v. The State, 76 Ala. 93." (79 Ala. at 231)

No sufficient reason appears why the court should refuse Charge 18 in the case at bar.

### Assignment 12.

Defendant assigns for error the refusal of the following charge:

"24. I charge you, gentlemen of the jury, that a certified copy of a certifi-

cate of death stating that the death of Milburn McGehee was caused by suicide is direct and positive evidence of suicide."

In pertinent part, the certificate is as follows:

The substantial question in the instant case relates to the effect which the trial court should have given to the certificate. The parties appear to agree that the certificate is sufficient and proper to come within the application of § 42, Title 22,

"CERTIFICATE OF DEATH  *DEPT EX E*
STATE OF ALABAMA
648

| | | | | |
|---|---|---|---|---|
| 1. PLACE OF DEATH a. COUNTY Jefferson | BEAT NO. 37064 | 2. USUAL RESIDENCE (Where deceased lived. If institution: Residence before admission) a. STATE Alabama | b. COUNTY Jefferson | |
| b. CITY, TOWN, OR LOCATION Fairfield | c. IS PLACE OF DEATH INSIDE CITY LIMITS? YES ☐ NO ☐ | e. CITY, TOWN, OR LOCATON Birmingham, 14  37XX8 | | d. IS RESIDENCE INSIDE CITY LIMITS? YES ☐ NO ☐ ON A FARM? YES ☐ NO ☐ |
| d. NAME OF HOSPITAL OR INSTITUTION (If not in hospital, give street address) Lloyd Noland Hospital | e. LENGTH OF STAY IN 1b 3 Days | d. STREET ADDRESS Rt#15 Box 1224 | | |

| 2. NAME OF DECEASED (Type or print) | First | Middle | Last | 4. DATE OF DEATH | Month | Day | Year |
|---|---|---|---|---|---|---|---|
| | MILBURN | ANDREW | MC GEHEE | | 2 | 1 | 1962 |

| 5. SEX Male | 6. COLOR OR RACE White | 7. MARRIED ☐ NEVER MARRIED ☒ WIDOWED ☐ DIVORCED ☐ | 8. DATE OF BIRTH 1-13-42 | 9. AGE (In years last birthday) 20 | IF UNDER 1 YEAR Months Days | IF UNDER 24 HRS. Hours Min. |
|---|---|---|---|---|---|---|

| 10a. USUAL OCCUPATION (Give kind of work done during most of working life) | 10b. KIND OF BUSINESS OR INDUSTRY | 11. BIRTHPLACE (State or foreign country) | 12. CITIZEN OF WHAT COUNTRY? |
|---|---|---|---|
| Unemployed | | Fairfield, Alabama | USA |

| 13. FATHER'S NAME Stanford E. Mc Gehee | 14. MOTHER'S MAIDEN NAME Nancy E. Pickle | 14a. NAME OF SURVIVING SPOUSE None |
|---|---|---|

| 15. WAS DECEASED EVER IN U. S. ARMED FORCES? (Yes, no, or unknown)(If yes, give war or dates of service) No | 16. SOCIAL SECURITY NO. | 17. INFORMANT'S NAME  Address *S.C. Mc Gehee* |
|---|---|---|

| 18. CAUSE OF DEATH (Enter only one cause per line for (a), (b), and (c).) | | INTERVAL BETWEEN ONSET AND DEATH |
|---|---|---|
| PART I. DEATH WAS CAUSED BY: IMMEDIATE CAUSE (a) Thrombosis of pulmonary veins | | |
| Conditions, if any, which gave rise to above cause (a), stating the underlying cause last. DUE TO (b) Shot gun blast to left chest | | 64 hours |
| DUE TO (c) | | |
| PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO THE TERMINAL DISEASE CONDITION GIVEN IN PART II(a) | | 19. WAS AUTOPSY PERFORMED? YES ☐ NO ☒ |

| 20a. (Probably) ACCIDENT ☐ SUICIDE ☒ HOMICIDE ☐ | 20b. DESCRIBE HOW INJURY OCCURRED (Enter nature of injury in Part I or Part II of Item 18.) Alleged self inflicted |
|---|---|
| 20c. TIME OF Hour Month, Day, Year approximately 6:00 P.M. 1-30-62 | |

| 20d. INJURY OCCURRED WHILE AT WORK ☐ NOT WHILE AT WORK ☐ | 20e. PLACE OF INJURY (e. g., in or about home, farm, factory, street, office) home | 20f. CITY, TOWN, OR LOCATION Birmingham | COUNTY Jefferson, | STATE Ala. |
|---|---|---|---|---|

21. I attended the deceased from 1-30-62, to 2-1-62 and last saw him alive on 2-1-62. Death occurred at 12:30 A.m. on the date stated above; and to the best of my knowledge, from the causes stated.

| 22a. SIGNATURE (Degree or Title) L. C. Hamrick, M.D. | 22b. ADDRESS Lloyd Noland Hospital Fairfield, Alabama | 22c. DATE SIGNED 2-2-62 |
|---|---|---|
| 23a. BURIAL, CREMATION, REMOVAL (Specify) Burial | 23b. DATE 2-2-62 | 23c. NAME OF CEMETERY OR CREMATORY Midway | 22d. LOCATON (City, town, or county) Jeff. Co. | (State) Ala. |
| 24. FUNERAL DIRECTOR Bell 2077 Pratt Hiwy. | ADDRESS | 25. DATE RECD. BY LOCAL REG. FEB 9 1962 | 26. REGISTRAR'S SIGNATURE Terry B Rogers |

1958 Recompilation of Code of 1940. When defendant offered the certificate in evidence, however, the plaintiff did object to that portion under Item 20-A.[2]

2. Plaintiff's objection was stated as follows:

"MR. SMALL: I would like to state this objection, if the Court please, that we object to that portion of the Death Certificate under Item 20-A, that information there under Item 20-A on the ground that it is a conclusion and that it

The court admitted the certificate and made the following statement:

"THE COURT: Well, if it be without conflict, that would appear, if it is let is not supported by the evidence in the Certificate, that the Certificate in itself is contradictory.

". . . . . . . .

"MR. SMALL: Item 20-A and Item 20-B are conflicting on their face."
(Tr. 149)

in it would so appear. If it be contradictory it would so appear, so I will admit the Certificate."

The pertinent sentence of § 42, Title 22, as amended by Act No. 636, 1959 Acts, page 1549, recites:

". . . . A copy or extract made from any record registered under these provisions, when authenticated by the state registrar, shall be prima facie evidence of the facts therein stated. . . . . "

In support of Assignment 12, defendant cites Fleetwood v. Pacific Mutual Life Ins. Co., 246 Ala. 571, 21 So.2d 696, 159 A.L.R. 171, and Jefferson Standard Life Ins. Co. v. Wigley, 248 Ala. 676, 29 So.2d 218. In *Wigley*, this court did say:

". . . . In the case of Fleetwood v. Pacific Mutual Life Ins. Co., supra, this court held that the death certificate constitutes direct and positive evidence of suicide and will prevail over the presumption against suicide unless the plaintiff goes forward with the case and introduces rebuttal evidence admitting of reasonable conflicting inferences against suicide. . . . .." (248 Ala. at 680, 29 So.2d at 221)

In *Fleetwood* and *Wigley*, the court was considering the circumstances in which the trial court ought to charge the jury that there is a presumption that a normal person will not commit suicide, where, in an action on a life insurance policy, the issue is whether insured died by suicide. In *Fleetwood* and *Wigley*, the court stated as a rule that:

". . . . . 'If there is direct and positive evidence of suicide and there is no conflicting inference from any evidence as to suicide, then the presumption against suicide has no field of operation. . . . .' " (248 Ala. at page 678, 29 So.2d at 220)

While *Fleetwood* and *Wigley* do hold that a properly authenticated death certificate does constitute direct and positive evidence of suicide within the meaning of those terms in the above stated rule, the court did not hold that a party has a right to have given to the jury a charge stating that a death certificate is "direct and positive evidence of suicide . . . . "

This court "has adhered to the view that under our statute, a certificate as provided for in section 42, supra, showing death by suicide is prima facie evidence of that cause producing death." Sorrow v. Industrial Life & Health Ins. Co., 259 Ala. 544, 549, [3], 68 So.2d 43, 47. The statute recites that the certificate, or copy, is "prima facie evidence" and not that the certificate is direct evidence.

A Missouri court defined direct evidence as follows:

"Under a strict definition of 'direct evidence,' the term means evidence which immediately points to the question at issue, or is evidence of the precise fact at issue and on trial, by witnesses who can testify that they saw the act done, or heard the words spoken which constitute the facts to be proved. 3 Words and Phrases Jud. Def. (First Series) 2072. . . . . " Stern v. Employers' Liability Assur. Corporation, Kansas City Mo. Court of Appeals), 249 S.W. 739, 741.

The Missouri court went on to hold, however, that circumstantial evidence of theft was sufficient to support a verdict for plaintiff in an action to recover on a policy of burglary insurance.

■ While the death certificate is held to be direct and positive evidence sufficient to satisfy the quoted rule in *Fleetwood*, that is not a holding that the certificate is "direct" evidence in every sense or under the strict definition stated by the Missouri court. The certificate does not purport to be and is not evidence of eyewitnesses who saw the gun fire and cause the death of the instant insured. The statute does not purport to make the certificate direct evidence in that sense. Utterances in judicial opinions are not always appro-

priate for instructions to the jury in a particular case. Gray v. Anderson, 241 Ala. 154, 157 [6], 1 So.2d 384.

In *Wigley,* supra, this court also said:

"Under the statute the certificate is given only prima facie effect as to the facts stated in the certificate. Code of 1940, Tit. 22, § 42, See Acts 1943, p. 454, § 14. The certificate does not import absolute verity to such stated facts, which means that the plaintiff had the right to try to contradict the facts as stated in the certificate. (Citations Omitted) This must be so because there would be no due process if the plaintiff was precluded by the certificate from a reasonable opportunity to submit to the jury all the facts bearing upon the issue of suicide. (Citation Omitted)" (248 Ala. at 681, 682, 29 So.2d at 223)

■ We are of opinion and hold that the court did not err in refusing defendant's requested Charge 24 because the charge has a tendency to mislead the jury by giving to the certificate greater weight than it is given by the statute and decisions of this court.

*Assignment 13.*

■ Defendant assigns for error refusal of its requested Charge 25 which is substantially the same as Charge 4 in Birmingham Trust & Savings Co. v. Acacia Mut. Life Ass'n, 221 Ala. 561, 130 So. 327, and Charge 10 in Sorrow v. Industrial Life & Health Ins. Co., 259 Ala. 544, 68 So.2d 43. In the two cases last cited, the court held that such a charge was given without error.

We quote what was said in Harris v. Wright, 225 Ala. 627, 630, 144 So. 834, 835, with respect to the Acacia charge:

"In Birmingham Trust & Savings Co. v. Acacia Mut. Life Ass'n, 221 Ala. 561, 130 So. 327, it was held that the court's failure to observe this distinction in charging the jury was not error to reverse, but such holding in no wise justifies a reversal of the trial court's ruling in refusing a charge which fails to observe such distinction. An observance of accuracy in instructions to the jury should be encouraged, rather than condemned."

Accordingly, the instant Charge 25 was refused without error.

*Assignments 14, 16, 17.*

Defendant assigns as error refusal of its requested Charge 26 which recites:

"26. I charge you, gentlemen of the jury, that while it is true that in the absence of any proof to the contrary, the presumption of fact is that Milburn McGehee did not die by his own hands, yet when defendant introduced into evidence a certified copy of the record of deceased's death kept in the office of the State Registrar of Vital Statistics, the effect of this certificate is to prove prima facie that deceased came to his death by gunshot wound, self-inflicted."

Defendant also assigns as error the giving of part of the oral charge in which the court said that it was for the jury to decide whether or not the death certificate is to be interpreted as stating that insured's death was the result of suicide.[3]

---

3. The court charged orally as follows:
   "There was a death certificate introduced in evidence. . . . . The law says about a death certificate this: That if a certificate of death is made and is filed at the proper place, that you may have a certified copy of it, and where the subject in there throws light on the question you are trying, that you can put that in evidence. And if the cause of death is stated in there, that that may be re-

ceived as some evidence of what is there stated.
   "To overturn that, if it is stated, the burden would be on the plaintiff to overturn it, if it is stated. But there is the thing for you to determine. You see, you look at it and you see there on 20–A it has got in parenthesis 'Probably accident' and then the word 'Suicide' and then the word 'Homicide' with a place underneath each one of them to put a mark.

It is apparent that the trial court took the view that the certificate is ambiguous; that is, that it could reasonably be understood as stating that insured's death resulted from suicide, or that the certificate could also reasonably be interpreted as stating that insured's death did not result from suicide. If the death did not result from suicide, it must have resulted from an accident. In other words, the trial court left it to the jury to say whether the certificate stated that death resulted from suicide or accident.

If the certificate is ambiguous and can be understood reasonably as having either one of two meanings, then the trial court was correct; if otherwise, the court erred. Thus, the question for decision is whether the certificate is ambiguous because it is reaonably susceptible to either of two meanings, i. e., that death resulted from accident or that death resulted from suicide.

In the oral charge, the court mentions the words "Probably" and "Alleged" which appear in Items 20a. and 20b. of the certificate. As to the word, "Probably," it is required by the statute which recites:

> ". . . . The medical certificate shall be made and signed by the physician, if any, last in attendance on the deceased, who shall specify the time in attendance, the time he last saw the deceased alive, and the hour of the day at which death occurred. He shall further state the cause of death, so as to show the course of the disease or sequence of causes resulting in the death, giving first the name of the disease causing death (primary cause) and the contributory (secondary) cause, if any, and the duration of each. Indefinite and unsatisfactory terms denoting only symptoms of diseases or conditions resultiing from disease will not be held sufficient for the issuance of a burial or removal permit; and any certificate containing only such terms, as defined by the state registrar shall be returned to the physician or person making the medical certificate for correction and more definite statement. Causes of death which may be the result of either disease or violence shall be carefully defined; and if from violence, the means of injury shall be stated, and whether (probably) accidental, suicidal, or homicidal. . . . ." Title 22, § 25, Code of Alabama Recompiled 1958.

With respect to the word, "Probably," in death certificates, this court has said:

> ". . . . And as for the contention that the certificate is invalid because it violates the statute, Code 1940, Tit. 22, § 25, through the omission of the word 'probably', we think the contention is unsound. Under the statute the certificate is only prima facie correct. 'Probable has been defined to be "having more evidence for than against".' Bain v. State, 74 Ala. 38. The effect of the certificate

And it has got an X under Suicide. So it reads, 20-A, 'Probably suicide'.

"But 20-B goes further and says—it doesn't say self-inflicted, it says 'alleged self-inflicted.'

"So exactly what does this thing say? Well, you know as much about that as I do. The law doesn't say what it says. It is for the evidence to talk. The law doesn't talk for the evidence. The evidence is the same it does its own talking. What does that say? What is the meaning of that? That is for you. That would be for you. You take the whole of it and come to your own judgment and your own conclusions about the thought or the meaning of what is here put down. It would be for you to say.

"I have said already that is to be interpreted as being a statement by the attending doctor that it was self-destruction, that is killing oneself knowingly, suicide in other words, if it is to be interpreted as meaning that it was a suicide, then the burden would be on the plaintiff to overcome that by reasonable testimony to the contrary. But unless that be so, unless that is to be interpreted as being a statement that it was suicide, unless that is so, then there would, of course, be the statement I have already given you, namely that it would be upon the defendant to carry the burden of proof to reasonably satisfy you that it was a suicide. And there would be a presumption against it."

is the same whether it includes or omits the word 'probably'. We regard this as an immaterial omission." Jefferson Standard Life Ins. Co. v. Wigley, supra, 248 Ala. at 682, 29 So.2d at 224.

We are of opinion that the word, "Probably," creates no ambiguity, whether it be considered alone, or in connection with the word, "Alleged," or with the entire certificate.

The use of the word, "Alleged," apparently caused the court to view the certificate as being ambiguous. If "Alleged" had been omitted, most likely there would have been no objection and the certificate would have been accepted as stating that death resulted from suicide.

Does the word, "Alleged," make the certificate reasonably susceptible of meaning that death was accidental and not suicidal? In Item 20a., there are three choices, one of which is "ACCIDENT." The doctor who signed the certificate and made the choice did not choose "ACCIDENT." He chose "SUICIDE." When he undertook in Item 20b. to "DESCRIBE HOW INJURY OCCURRED," he used the words "self inflicted." Does the use of "Alleged" show that the self-inflicted wound was accidental?

"Alleged" is used by lawyers generally with respect to pleading. In this use, it is substantially equivalent to the words "said" or "stated." The doctor, in describing how the injury occurred, can hardly be charged with using "alleged" with reference to pleading. In Black's Law Dictionary, Fourth Edition, 1951, page 99, the meaning of "Alleged" is stated as:

"Stated; recited; claimed; asserted; charged."

In Item 18, the doctor had already stated that the conditions, which gave rise to immediate cause of death, were due to:

"Shot gun blast to left chest."

In Item 20b., by using the word "Alleged," he merely declared that it had been "Stated; recited; claimed; asserted; (or) charged" that the wound was self-inflicted.

Wigmore, Third Edition 1940, discusses death certificates under "SUB-TITLE II (*continued*): EXCEPTIONS TO THE HEARSAY RULE," Evidence, Vol. V, page 202, et seq. The question whether personal knowledge is essential on the part of the officer making the record is said to be a difficult one. See § 1646, page 591, where it is said:

"(3) So far as policy and practical safety are concerned, it is at first sight unsatisfactory to accept an entry as evidence of a fact not occurring within the personal knowledge of the entrant. At the same time, there are reconciling considerations. In the first place, there is in the vast majority of instances no controversy at the time and no motive to deceive the official; his record is, on the whole, of sufficient trustworthiness to be at least worth receiving in evidence. In the next place, the secular registers must in any case be founded on the testimony of some one else; and a discrimination between entries founded on the reports of physicians, midwives, undertakers, and ministers, and entries founded on the reports of parents or other family members would be out of the question. Finally, in strictness, the registrars do not have personal knowledge of even the most fundamental facts, of which their entries are now accepted without cavil; for example, how can a minister always say with personal knowledge that the persons married by him were M and N, or how can a registrar usually have personal knowledge that the child registered was actually born to S, or was a boy or a girl? If we are to insist with pedantic strictness upon the entrant's personal knowledge, it will be found that the registers will cease to be of much practical service for any purpose.

"On the whole, then, it is sound policy to receive all such registers as evidence (*a*) first, of the facts *required by law* to

be recorded, and (b) next, if no law specifically provides for the contents of the register in question, of the fundamental facts *customarily* entered in such registers directly on the faith of other persons having personal knowledge,—namely, in birth or baptism registers, of name, sex, parentage, and date of birth; in marriage registers, of name, age, residence, and date of ceremony; and in death of [or ?] burial registers, of name, sex, age, residence, date of death, and cause of death. . . . . ." [Brackets Added]

A physician might be present and have personal observation and knowledge of the facts of how a person suffered a gunshot wound, but that would be a rare case. In the vast majority of gunshot wounds, and other injuries, the physician who signs the certificate will not have any personal knowledge of how the shooting or other injury occurred. In such cases, he must rely on what someone tells him. In the instant case, he testified that he had no personal knowledge whether the wound was self-inflicted intentionally or was accidental and that the information in Item 20b. was entered on information that was placed in the records. The entry in Item 20a. was also based on hospital records.

Unless the attending physician is to be allowed to make entries based on information he has received from or been told by someone else, he cannot complete the certificate as required by the statute. The certificate is hearsay, but it is made prima facie evidence by the statute.

"There is no doubt of the legislative power to enact that the certificate shall be prima facie evidence of the facts recited. (Citations Omitted)" Sorrow v. Industrial Life & Health Ins. Co., supra, 259 Ala. at page 549, 68 So.2d at page 47.

The instant certificate declares that death was "Probably" suicide as required by the statute. The fact that the certificate indicates that the description of how the injury occurred is based on what has been "Alleged" or stated, by someone other than the physician making the certificate, furnishes no more reason to doubt the statement that death was by suicide in the instant case than in a case where the physician did not state that his entry was based on information received from someone else. We do not think the certificate can reasonably be construed to mean that the shooting was accidental and not suicidal.

Accordingly, we are of opinion that the court erred in its oral charge. We hold also that Charge 26 is not bad for the reason that the death certificate was ambiguous. Charge 26 was not covered by the oral charge. As we understand the brief of appellee, no other reason is argued to justify refusal of Charge 26. We think it should have been given.

We do not think that Alabama Great Southern Railroad Co. v. Morrison, 281 Ala. 310, 202 So.2d 155, cited by appellee, has any bearing on the instant case.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and BLOODWORTH, JJ., concur.