274 So.2d 291

**JEFFERSON STANDARD LIFE INSURANCE COMPANY, a corporation,**

v.

**Linda Hall PATE.**

**SC 57.**

Supreme Court of Alabama.

March 8, 1973.

Spain, Gillon, Riley, Tate & Ansley and Ollie L. Blan, Jr., Birmingham, for appellant.

Wheeler & Christian, Birmingham, for appellee.

McCALL, Justice.

Linda Hall Pate, the appellee, brought this action on the double indemnity agreement attached to and forming a part of a life insurance policy, issued by the appellant Jefferson Standard Life Insurance Company to her now deceased husband, Thomas Attaway Pate, the named insured. He died from a shotgun wound inflicted in the upper area of the right chest. The appellant paid the appellee as beneficiary under the policy the face amount thereof but declined to pay under its double indemnity agreement. This, in essence, provides that the company will pay the beneficiary an additional amount equal to the face amount of the policy, if the death of the insured should result in consequence of bodily injuries effected directly and independently of all other causes through external, violent, and accidental means. The agreement further provides that this additional amount shall not be payable if the death of the insured results directly or indirectly from suicide or any attempt thereat whether sane or insane. The gravamen of the appellee's single count complaint is that the insured died as a result of an accident which was effected directly and independently of all other causes through external, violent and accidental means. The insurance company pleaded in short by consent the general issue, contending that death was the result of intentional suicide. After the close of the case, the jury returned a verdict in favor of the appellee for the full amount sued for, with interest added. The appellant appeals from the judgment entered on that verdict.

The appellant insists that there was not even a scintilla of evidence upon which to submit the case to the jury and that its requested affirmative charge should have been given. However, the appellant states that the real issue is that the evidence was insufficient to sustain the burden of proof cast on the appellee to establish that

Thomas Attaway Pate met his death as the result of accidental means and its motion for a new trial should have been granted. The issue so made necessitates our setting out a résumé of the circumstances attending the insured's death.

At the time of his death, the insured was thirty-four years of age, married to the appellee, and residing with her and their three minor children at Empire, Alabama, in a neighborhood where his younger brother, another relative and several friends lived close by. There was a mortgage on his home and automobile, and he owed a loan of $1200. He had no financial troubles. He was gainfully employed by South Central Bell and had been recommended for promotion. So far as is known he was physically and mentally well, was of good personal habits, had manifested no depression or despondency, or emotional stress and had no marital or domestic bothers. On the morning prior to his death that afternoon, he returned to his home about 1:00 a. m. from his employment and went to bed. He arose around six or seven a. m. and after a visit and an automobile drive about the crops with his neighboring brother, who operated a farm adjoining him, he had some breakfast. He then sat around his house, after which he went back outside while his wife was canning corn and doing some washing. At sometime during the morning he had a can of beer, or two or three drinks of whiskey. He telephoned his employer that he would not be in for work that Saturday afternoon. He had an arrangement which allowed him to select his two off days each week. He told his wife that he was going to farm. He had his own garden and had also on occasions voluntarily helped his younger brother in his farm operation. He went fishing and hunting, during season, whenever he had an opportunity. After the telephone call to his employer, he sat in the den of the house and smoked. His wife was preparing lunch about 11:30 or 12:00 o'clock, and later about 1:00 or 1:30 p. m. while she and their nine year old son were at the table eating, the in-

sured walked by them and went into his and his wife's bedroom. Within a few minutes, she heard a muffled sound. She was only able to crack the door and through this, she saw part of her husband's legs extended on the floor. No one was in the room when the fatal shot was fired and there were no eye witnesses to the shooting. The insured was gasping for breath and near death when the first person reached him. He was partly sitting and partly leaning against the wall with his shotgun lying along his right side with the barrel pointing toward the wall against which his back was leaning. The exact position of the gun with relation to his body varies with the testimony of the witnesses. The breach was partly open with an exploded shell sticking out of the chamber. There were powder burns on the side of the wound nearer the center of his chest. Such indicated a contact wound where the muzzle of the gun barrel was against the chest on the outward side and slightly away from the chest on the inward side toward the chest center. A live shell was found in the magazine and was ejected by rearward action of the breach lever. There was testimony that he kept his 16 gauge automatic Browning loaded on the right side, in the bedroom closet behind his wife's clothes. He kept his work clothes hung on a nail inside the closet door. Within the previous two weeks he had shot at something killing his chickens and disturbing his garden, and that morning he had said that he was going to try to catch some rabbits in his garden before he went to work. There was some testimony of a previous malfunction and misfiring of his shotgun. The coroner and detective investigating the case were unable to find anything wrong with the gun. While they were in the insured's bedroom the detective found a notebook lying on the bed. It was of a sort furnished by his employer, a number of which the insured had given his family. On the first page appeared the partly written and partly printed words "Don't forget God." The death certificate which was in evidence gave suicide as the

cause of death and described the injury as: "Shot self with shotgun." The coroner and detective testified orally that in their opinion suicide was the cause of death. There was entire absence of motive shown for suicide.

■ There is a presumption of law against a normal and sane person committing suicide, Jefferson Standard Life Ins. Co. v. Wigley, 248 Ala. 676, 29 So.2d 218 (1947); Atlantic Coast Line R.R. Co. v. Wetherington, 245 Ala. 313, 16 So.2d 720 (1944); New York Life Ins. Co. v. Beason, 229 Ala. 140, 155 So. 530 (1934); Protective Life Ins. Co. v. Swink, 222 Ala. 496, 132 So. 728 (1931); Missouri State Life Ins. Co. v. Roper, 5 Cir., 44 F.2d 897 (1930); New York Life Ins. Co. v. Turner, 213 Ala. 286, 104 So. 643 (1925); Penn Mutual Life Ins. Co. v. Cobbs, 23 Ala.App. 205, 123 So. 94 (1929); Law of Evidence, McCormick, § 309, p. 643, but there are situations when the presumption is applicable and on the contrary, there are situations when the presumption has no field of operation. Jefferson Standard Life Ins. Co. v. Wigley, 248 Ala. 676, 29 So.2d 218; Fleetwood v. Pacific Mutual Life Insurance Co., 246 Ala. 571, 21 So.2d 696, 159 A.L.R. 171. When the presumption has applicability, we have said this about its force:

"* * * It is a substantive right and not a mere 'technical incident of the trial wrought for administrative purposes.' It does not spend its force as substantive evidence until the testimony in the case is sufficient, in the judgment of the jury, to overcome it. Mutual Life Ins. Co. of N. Y. v. Maddox, 221 Ala. 292, 128 So. 383; New York Life Ins. Co. v. Turner, 213 Ala. 286, 104 So. 643." Mutual Benefit Health & Acc. Ass'n of Omaha v. Reid, 279 Ala. 136, 141, 182 So.2d 869, 873; Fleetwood v. Pacific Mutual Life Ins. Co., supra, 246 Ala. at p. 574, 21 So.2d 696.

■ We have observed however that when the evidence as to suicide does not otherwise show a conflict, or conflicting inferences, the presumption against suicide is not sufficient of itself to create such a conflict. See Mutual Life Ins. Co. of N. Y. v. Maddox, 221 Ala. 292, 128 So. 383. Nor may the presumption be indulged in where evidence of suicide is direct and undisputed, and no two inferences can be reasonably drawn therefrom, if the jury believe it. Sovereign Camp, W.O.W. v. Hackworth, 200 Ala. 87, 75 So. 463.

We stated the rule more concisely in Fleetwood v. Pacific Mutual Life Ins. Co., 246 Ala. 571, 574, 21 So.2d 696, 698, as follows:

"* * * If there is direct and positive evidence of suicide and there is no conflicting inference from any evidence as to suicide, then the presumption against suicide has no field of operation. On the contrary, if there is direct and positive evidence of suicide and there is a conflicting inference from any evidence as to suicide, then the presumption against suicide has a field of operation. If the evidence is all circumstantial, then the presumption against suicide has a field of operation. We may add that inference means reasonable inference and not mere speculation or conjecture. Alabama Power Co. v. Watts, 218 Ala. 78, 117 So. 425; Sovereign Camp, W.O.W. v. Hackworth, supra [200 Ala. 87, 75 So. 463]."

The above rule is also quoted in Jefferson Standard Life Ins. Co. v. Wigley, 248 Ala. 676, 678, 29 So.2d 218.

The appellant insists in brief that there was direct and positive evidence of suicide because of: (1) the certified copy of the death certificate listing the insured's death as suicide, (2) the testimony of Detective Graham and Coroner Butler expressing their opinions that suicide was the cause of death, (3) the nature of the wound, (4) the note found on the bed, "Don't forget God," (5) the absence of any gun cleaning gear, (6) the tests which were made of the gun immediately after the death of the insured, (7) the fact that the exploded shell had

lodged in the gun chamber, and (8) the fact that the insured had notified his employer that he would not report for work that day.

With reference to the evidentiary effect of the death certificate, we observe that the pertinent part of the statute, Tit. 22, § 42, Code of Alabama, Recompiled 1958, as amended, Acts of Alabama, 1969, p. 2074, provides as follows:

"* * * A report of a search, a copy, or extract made from any record registered under these provisions, when authenticated by the state registrar, shall be prima facie evidence of the facts therein stated. * * *"

In the case of Fleetwood v. Pacific Mutual Life Ins. Co., 246 Ala. 571, 577, 21 So.2d 696, 701, after looking at all the evidence, the court concluded:

"We do not think that there is a reasonable, conflicting inference as to suicide in the case and so we conclude that the court was not in error in refusing the charges on presumption against suicide."

The court held that the death certificate, showing suicide, was not only not inconsistent with the facts shown by the evidence, but strengthened by them. Under the circumstances, the court said that the death certificate constituted direct and positive evidence of suicide and would prevail over the presumption against suicide unless the plaintiff went forward with the case and introduced rebuttal evidence, admitting of reasonable conflicting inferences against suicide.

In Jefferson Standard Life Ins. Co. v. Wigley, 248 Ala. 676, 29 So.2d 218, after reviewing in detail and analyzing the pertinent evidence, the court found there were no conflicting inferences in the evidence as to the insured's death being the result of suicide. We therefore concluded that the trial court was in error in charging on the presumption against suicide and reversed

the case. It is true that in *Wigley*, supra, the court said:

"* * * In the case of Fleetwood v. Pacific Mutual Life Ins. Co., supra [246 Ala. 571, 21 So.2d 696], this court held that the death certificate constitutes direct and positive evidence of suicide and will prevail over the presumption against suicide unless the plaintiff goes forward with the case and introduces rebuttal evidence admitting of reasonable conflicting inferences against suicide. * * *"

 However we think that the court made this observation in *Fleetwood* and *Wigley* in the light of the facts peculiar to those cases, that is, where there were no conflicting inferences from the evidence against suicide, the evidentiary value of the death certificate was so strengthened as to prevail over the presumption against suicide. But the presumption against suicide —which in our opinion is applicable in the instant case—cannot be overcome by the introduction of the death certificate showing suicide where there otherwise are conflicting inferences against suicide, and the force of the presumption as substantive evidence continues until the testimony is sufficient, in the judgment of the jury, to overcome it. The burden in a civil case to overcome the presumption is reasonable satisfaction from the whole evidence, giving due weight to the presumption in the light of judgment and experience. Mutual Life Ins. Co. of N. Y. v. Maddox, 221 Ala. 292, 128 So. 383. It follows that a jury question is presented as here, where the presumption against suicide has a field of operation.

The authenticated death certificate is simply what the statute, Tit. 22, § 42, Code of Alabama, Recompiled 1958, constitutes it to be, that is, prima facie evidence of what it purports to show as the cause of death. Sorrow v. Industrial Life and Health Insurance Co., 259 Ala. 544, 68 So.2d 43. The statute recites that the certificate, or copy, is "prima facie evidence" and not that the certificate is direct evidence.

In Independent Life and Accident Ins. Co. v. McGehee, 284 Ala. 394, 400, 225 So. 2d 805, 811, this court said:

"While the death certificate is held to be direct and positive evidence sufficient to satisfy the quoted rule in Fleetwood, that is not a holding that the certificate is 'direct' evidence in every sense or under the strict definition stated by the Missouri court [Stern v. Employers' Liability Assurance Corporation, Kansas City Mo. Court of Appeals, 249 S.W. 739, 741]. The certificate does not purport to be and is not evidence of eyewitnesses who saw the gun fire and cause the death of the instant insured. * * *"

Again in Jefferson Standard Life Insurance Co. v. Wigley, 248 Ala. 676, 29 So.2d 218, this court said:

"Under the statute the certificate is given only prima facie effect as to the facts stated in the certificate. Code of 1940, Tit. 22, § 42, See Acts 1943, p. 454, § 14. The certificate does not import absolute verity to such stated facts, which means that the plaintiff had the right to try to contradict the facts as stated in the certificate. (Citations omitted.) This must be so because there would be no due process if the plaintiff was precluded by the certificate from a reasonable opportunity to submit to the jury all the facts bearing upon the issue of suicide. Ex parte Woodward, 181 Ala. 97, 61 So. 295."

Therefore the certificate may be said to be direct and positive evidence of what it purports to show only when there are no conflicting inferences against suicide and it was in that context that it was held to be direct and positive evidence in *Fleetwood* and *Wigley,* supra, otherwise it is prima facie evidence by force of the statute, Tit. 22, § 42, supra.

In Sovereign Camp, W.O.W. v. Dennis, 17 Ala.App. 642, 87 So. 616, the court said:

"A witness, who examined the body of deceased, at the place where found, together with the locus in quo, is not qualified as an expert in that sense that he can give as evidence his opinion as to the cause of death. He may testify to the facts, but the jury must draw the conclusions. Sov. C. W.O.W. v. Ward, 196 Ala. 327, 71 So. 404."

In Sovereign Camp, W. O. W. v. Ward, 196 Ala. 327, 71 So. 404, this court said:

"No error was committed in excluding that part of the answer of Dr. Hawkins that 'he committed suicide.' This was the question of fact made a material inquiry in the case—the manner and cause of decedent's death. Whether by accident or suicide was the issue, and the fact could not be shown by such declarations."

The opinions of the detective and coroner that suicide was the cause of death were admitted into evidence in the present case without objection. However, any statement by these witnesses that the insured killed himself was a conclusion based on mere hearsay. Sovereign Camp, W. O. W. v. McLaughlin, 237 Ala. 33, 185 So. 378; Sovereign Camp, W.O.W. v. Adams, 204 Ala. 667, 673, 86 So. 737. This could not be said to be direct evidence so as to fully overcome the presumption against suicide as they did not see the shooting.

As to the note "Don't forget God" on the front page of a paperback notebook in which there was recorded some business data by the deceased, there were conflicting tendencies in the evidence as to its being in the insured's handwriting, and no evidence as to the time when the note was written. The probative value and weight of the note were matters addressed to the jury's consideration along with other material circumstances in the case.

None of the other matters in evidence insisted on in brief by appellant as constituting direct and positive evidence was entirely consistent with suicide and without conflicting inference against it. Nor do these matters when considered collectively

with the other evidence in the case, lead to the lone conclusion that the insured intentionally killed himself. The entire evidence was circumstantial.

The facts found in the opinion in the case of Mutual Benefit Health and Accident Association of Omaha v. Reid, 279 Ala. 136, 140, 182 So.2d 869, are in many respects quite similar to those of the instant case and there it was decided that the trial court did not err in finding that the death was accidental. That opinion cites Penn Mutual Life Insurance Co. v. Cobbs, 23 Ala.App. 205, 123 So. 94, where it was said:

"We do not mean to say that suicide cannot be established by circumstantial evidence, but we do lay down the rule as applicable to any case, either civil or criminal, that, where a felonious intent is involved, and the facts relied on to prove the act are circumstantial, the intent with which the act was done is a question for the jury, to be determined from all the facts and circumstances surrounding the transaction. Love v. State, 16 Ala.App. 44, 75 So. 189; Brown v. State, 142 Ala. 287, 38 So. 268; Jackson v. State, 94 Ala. [85], 89, 10 So. 509; Wigmore Ev. § 300. Where the facts, as here, are circumstantial, the law indulges the presumptions in favor of the innocence of the insured, until the evidence of suicide is so strong and convincing as to exclude every other reasonable hypothesis than that the insured alone is guilty. McKenzie v. State, 19 Ala.App. 319, 97 So. 155."

■ We think that the evidence in this case as to the cause of death being accidental or suicide has conflicting inferences, that therefore the presumption against suicide has a field of operation which was not overcome by the prima facie evidence of suicide afforded by the certified copy of the death certificate. that the trial court did not err in submitting the issue of suicide to the jury and instructing the jury as to the presumption against suicide, and

that there was ample evidence to sustain the jury's finding that the death of the insured was accidental. The trial court did not err in refusing the general affirmative charge, both with and without hypothesis, requested in writing by the appellant.

The appellant's refused charge 12 reads as follows:

"I charge you that if you are reasonably satisfied from the evidence in this case that any witness has willfully testified falsely as to any material facts in this case, then you are authorized in your sound discretion to disregard that witness's testimony in its entirety, or any part thereof which you are reasonably satisfied from the evidence the witness has willfully testified falsely."

■ The case of Independent Life & Accident Ins. Co. v. McGehee, 284 Ala. 394, 225 So.2d 805, is cited as authority for the charge, but the charge in that case is not the same as the refused charge in this case which instructs the jury that they may disregard the witness' testimony in its entirety, "or any part thereof which you are reasonably satisfied from the evidence the witness has willfully testified falsely." The charge is bad because it is susceptible of meaning that the jury may discard any part of the witness' willfully false testimony. In Dixie Highway Express, Inc. v. Southern Ry. Co., 286 Ala. 646, 649, 244 So.2d 591, 594, we said:

"* * * No discretion should be allowed a jury to consider and give weight to wilfully false testimony on a material point, even in part."

■ The substance of the appellant's refused charge 15 is that a certified copy of the record of the insured's death kept by the Bureau of Vital Statistics is presumptive evidence of the facts therein stated and proved prima facie that death came by suicide. Without determining its legal correctness, we note that this charge is substantially covered in appellant's given charge 13. The refusal of the charge was

not error. Rule 45, Revised Rules of Practice in the Supreme Court, Appendix to Title 7, Code of Alabama, 1940; Birmingham v. Bowen, 254 Ala. 41, 47 So.2d 174; Ferguson v. Callahan, 262 Ala. 117, 76 So.2d 856.

In its oral charge the court did not state that the death certificate was prima facie evidence but that a certified copy may be received as evidence, and is some evidence of what it states. The subject of its being prima facie evidence however was fairly and fully covered by the requested given charge 13. Frith v. Studdard, 267 Ala. 315, 101 So.2d 305.

The judgment of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and JONES, JJ., concur.