HORNSBY, Chief Justice.
Charles William Crane [1] sued Jeff Rush, a probation officer for the Jefferson County Family Court Detention Center, for damages based on alleged assault and battery. The jury returned a verdict for Rush. Subsequently, the trial court denied Crane’s motion for new trial, and he appealed. We affirm.
The issue is whether the trial judge abused his discretion in allowing Rush’s witnesses to testify after Rush allegedly failed to respond as thoroughly to Crane’s propounded interrogatories as Crane thought he should have.
Crane’s interrogatory 20 to Rush read: “State the name, job title, and address of the employee or employees of the Jefferson County Family Court Detention Facility in the immediate area where the altercation described in the Complaint took place.” Rush responded: “None. See answer to 16 above.” Interrogatory 16 to Rush read: “Describe in detail the acts of the Plaintiff that precipitated the events complained of in the Complaint.” Rush responded: “I have no knowledge of the alleged events occurring at the time alleged in the Complaint, therefore, I know of no acts of the Plaintiffs that precipitated those events.”
Crane was notified by Rush’s attorney during the first day of the trial that the defense intended to present as witnesses certain employees of the Jefferson County Family Court Detention Facility who were in the general area during the alleged altercation. Crane filed a motion to exclude the testimony of these witnesses, but the trial judge, after hearing arguments, denied the motion and allowed the witnesses to testify-
Rush argues that he completely and truthfully answered the interrogatories as they were posed. That is, Rush contends *852 that he answered the questions based on the date indicated in the complaint. The complaint read:
“2. On or about the 21st day of June, 1985, the Plaintiff went to the Jefferson County Family Court, Juvenile Detention Facility, located at 120 Second Court, North, Birmingham, Alabama, to visit a friend detained there. He was accompanied by four boys, also teenagers, and the mother of the youth they were visiting. The Plaintiff and his four teenage companions had to remain in the waiting room of the Detention Facility while the mother visited her son in the visitation room adjacent to the waiting room. A glass partition separated the waiting room from the visitation room.
“3. The Plaintiff and his four teenage companions, in order to communicate with and see their friend in the adjacent room, moved over to the glass partition and held notes up to the glass so their friend could read them; there were no signs warning against standing next to the glass partition, nor did anyone warn the Plaintiff and his companions not to stand next to the partition and hold notes up to the glass.
“4. Plaintiff avers, that while he and his four companions were holding the notes up to the glass partition, the Defendant entered the waiting room escorting two juvenile detainees; the Defendant seemed to be in a very foul mood. When the Defendant saw the Plaintiff and his four companions standing next to the glass partition, he shouted at them, demanding that they move away from the partition; the Plaintiff was unable to ascertain what the Defendant was demanding and hesitated for a moment. Whereupon, the Defendant taunted the Plaintiff by asking very sarcastically if he had some kind of problem; the Plaintiff answered no to the Defendant’s inquiry.”
Rush argues that his answers to the interrogatories were based on the June 21,1985, date stated in the complaint. The evidence at trial established that the alleged assault and battery occurred on May 8, 1985.
We have accepted the following proposition regarding discovery:
“ ‘Generally speaking, the purpose of modern discovery is to assist the administration of justice, to aid a party in preparing and presenting his case or his defense, to advance the function of a trial in ascertaining truth, and to accelerate the disposition of suits. Beyond this, the rules for discovery are designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments be rested upon the real merits of cases and not upon the skill and maneuvering of counsel.’ 23 Am.Jur.2d, Depositions and Discovery, § 155 (1956). Stated otherwise, the rules seek to ‘make a trial less a game of blind man’s buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.’ United States v. Procter and Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).”
Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 103 (Ala.1981).
The admission of testimony that may not have been discovered in accordance with properly conducted pretrial discovery procedure is within the trial court’s discretion. See Brackett v. Coleman, 525 So.2d 1372 (Ala.1988). “Absent ‘palpable abuse’ of that discretion, [the trial court’s] decision will not be disturbed on appeal.” Id. at 1379. See also Alabama Power Co. v. Courtney, 539 So.2d 170 (Ala.1989); Electrolux Motor AB v. Chancellor, 486 So.2d 414 (Ala.1986); Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala.1984).
In Erwin v. Sanders, 294 Ala. 649, 320 So.2d 662 (1975), the plaintiff had submitted interrogatories seeking names of the expert witnesses that the defendant would use during the trial. The defendant responded by naming a witness, and the plaintiff took the witness’s deposition. The day before the trial, the defendant indicated that he would call an additional expert witness. The plaintiff objected after the trial had started. The plaintiff alleged that the expert witness’s name had not *853 been revealed to him in response to his interrogatories. The plaintiff claimed “surprise” and sought to have the testimony excluded. After reviewing the plaintiffs argument, the trial court allowed the additional expert to testify. On appeal, this Court determined that, under the facts, the trial court had not abused its discretion in allowing the expert witness to testify.
In the present case, the record reflects that the trial judge spent a substantial amount of time deciding whether to allow Rush’s witnesses to testify, because of the manner in which Rush had responded to interrogatory 20. In an effort to determine whether Crane would be prejudiced or would suffer undue hardship if Rush’s witnesses were allowed to testify, the trial judge heard a substantial amount of oral argument from both parties concerning Rush’s response to the interrogatories. Also, before allowing Rush’s witnesses to testify, the trial judge required Rush’s counsel to provide an outline of what the witnesses’ testimony would be about.
Counsel for Rush indicated that the witnesses were going to testify: (1) that after the lawsuit was received an investigation was made to determine whether Crane’s friend, M.M., was at the detention home on June 21, 1985; (2) that a review of the inmate population records indicated that M.M. had been at the detention home until June 11, 1985; (3) that M.M.’s mother had visited the facility on several occasions; and (4) that on one of the mother’s visits, in May 1985, Rush had escorted a young man from the visiting or waiting room.
The record further reveals that Rush testified that he was not aware of any other employee who was present during the alleged assault and battery. The trial judge found that this was consistent with Rush’s answers to the interrogatories.
The trial judge also heard testimony from one of Rush’s witnesses before ruling on Crane’s motion to exclude the testimony of these witnesses. Crane’s counsel declined to cross-examine this witness during this meeting. While recognizing that a deposition is not necessary in every case, we note that Crane failed to depose Rush during the five years between the time of the alleged assault and battery and the trial.
From the record before us, we conclude that the trial court acted within its discretion, and therefore did not commit reversible error in allowing the defendant’s witnesses to testify. Therefore, we affirm.
AFFIRMED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.

. When his complaint was filed, Crane was a minor, and the complaint was filed through his mother and next friend. Since that time, however, he has reached the age of majority.